UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NICHOLE LEE JOHNSON,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:21-cv-01993-EJY<br><br>**ORDER** |

Plaintiff Nichole Lee Johnson ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). ECF No. 19. For the reasons stated below, the Commissioner's decision is affirmed.

**I.  BACKGROUND**

On August 23, 2019, Plaintiff filed an application for SSI alleging a disability onset date of August 15, 2016. Administrative Record ("AR") 193-203. The Commissioner denied Plaintiff's claims by initial determination on May 14, 2020 (AR 125-130), and upon reconsideration on April 17, 2019. AR 98-103. On January 11, 2021, Administrative Law Judge ("ALJ") Barry H. Jenkins held a hearing at which Plaintiff testified. AR 46-74. The ALJ issued his decision finding Plaintiff was not disabled on February 17, 2021. AR 24-45. When the Appeals Counsel denied Plaintiff's request for review on September 9, 2021, the ALJ's decision became the final order of the Commissioner. AR 1-6, 42 U.S.C. § 405(g). This civil action followed.

**II.  STANDARD OF REVIEW**

A reviewing court must affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, … [the Court] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And, the Court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under the Act.

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180

F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps include:

1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. 20 C.F.R. § 404.1520(b).

2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. 20 C.F.R. § 404.1520(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. 20 C.F.R. § 404.1520(e).

5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and entitled to disability insurance benefits. 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and entitled to disability benefits. *See id*.

B.      Summary of ALJ Findings.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from the application date of August 23, 2019. AR 29. At step two, the ALJ found that Plaintiff suffered from inflammatory bowel disease, Crohn's disease, and obesity, all of which he found to be severe

impairments. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that meet or equal any "listed" impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 31.

In preparation for step four, the ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to "[p]erform light work as defined in 20 CFR 416.967(b) except that she must have ready access to a bathroom during regularly scheduled breaks." AR 32.[1] At step four, the ALJ found Plaintiff was unable to perform past relevant work as a cook. AR 38. After testimony from the VE, the ALJ found at step five that there are other jobs that exist in significant numbers in the national economy Plaintiff could perform given her age, education, work experience, and RFC. *Id.* For example, the ALJ found Plaintiff was capable of performing the jobs of cafeteria attendant, routing clerk, and office helper. *Id.* Thus, the ALJ concluded Plaintiff was not disabled. AR 40.

C.   The Parties' Arguments.

Plaintiff argues (1) the ALJ's finding that Plaintiff did not need bathroom access beyond regularly scheduled work breaks was erroneous because it lacked the support of an underlying medical opinion, and (2) the ALJ failed to articulate clear and convincing evidence for discounting Plaintiff's symptom testimony. ECF No. 19 at 5-6.

First, Plaintiff claims the ALJ made an unqualified RFC determination because he "rejected or found unpersuasive all medical opinions that addressed or could be read to reasonably address limitations relating to Johnson's Crohn's disease." *Id.* at 6. Plaintiff also challenges the ALJ's finding that statements by the state agency doctors regarding Plaintiff's restroom use were not wholly persuasive. *Id.* at 5. Plaintiff stipulates to the ALJ's summary of the medical evidence, asks the court to "take notice of that summary;" but then argues "it is not clear how the ALJ translated that evidence into an RFC that ready access to a bathroom could be accommodated within the regularly scheduled work breaks." *Id.* at 6. Plaintiff concludes the ALJ interpreted raw medical data based only on his lay opinion in violation of Ninth Circuit law. *Id.* at 7, *citing Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

---

[1] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

4

Plaintiff cites several cases for the proposition that "[t]he ALJ must have a medical opinion to support his RFC." ECF No. 19 at 6-7, *citing Aliza W. v. Saul*, Case No. CV 20-09189-JEM, 2021 WL 3190902, at *4 (C.D. Cal. July 28, 2021), *citing de Gutierrez v. Saul*, Case No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020); *Goolsby v. Berryhill*, Case No. 1:15-cv-00615-JLT, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017); *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991). Plaintiff argues the ALJ "should have reconciled the discrepancy" between medical evidence and opinions of record, presumably in reference to the ALJ's finding that Plaintiff failed to articulate how her condition would require increased restroom access. ECF No. 19 at 8. Plaintiff suggests the ALJ "could have recontacted the state agency physicians and sought clarification of their opinions" or "arranged for a consultative examination to address this issue." *Id.*

Plaintiff's second argument asserts the ALJ failed to articulate clear and convincing reasons for discounting Plaintiff's testimony of her symptoms. *Id.* Plaintiff argues the ALJ's reference to Plaintiff's improvement was considered "in a vacuum" rather than in light of the record as a whole, which the law requires. *Id.* at 9, *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Plaintiff also takes issue with the ALJ discounting Plaintiff's testimony based on her daily activities. *Id.* at 10. Plaintiff claims "[t]he ALJ did not explain the nexus between [Plaintiff's] ability to engage in these routine activities with the rigors of full-time employment." *Id.*, *citing Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Plaintiff asserts that when the ALJ failed to credit Plaintiff's symptom testimony because it was uncorroborated by medical evidence, he did so applying the wrong standard. *Id.* at 11. That is, Plaintiff contends the ALJ should have applied the standard established in *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) requiring "consideration of 'excess pain' not simply the degree of pain limitation established by the objective medical evidence." ECF No. 19 at 11.

In response to Plaintiff's arguments, Defendant contends Plaintiff fails to explain how the cases she cites or the medical evidence specifically undermines the RFC. ECF No. 20 at 6. Defendant points out that Plaintiff does not contest the ALJ's evaluations of medical opinions provided by the state agency consultants, but instead takes issue with the ALJ finding these opinions

5

wholly or partially unpersuasive. *Id.* Defendant argues "[t]here is simply no requirement that a claimant's RFC be based on a medical opinion or a prior administrative finding" and that binding precedent explicitly holds that an ALJ, not medical sources, has the responsibility for calculating a plaintiff's RFC. *Id* at 7; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Defendant emphasizes the regulations assign the ALJ the precise task of reviewing "x-rays … treatment history, and clinical findings" so as to determine a plaintiff's RFC. *Id.*

Defendant cites *Moore v. Kijakazi*, Case No. 2:20-cv-01988-BNW, 2022 WL 716811, at *6 (D. Nev. Mar. 10, 2022), in which the court held the plaintiff failed to establish the ALJ's decision lacked the support of substantial evidence because she did "not provide any analysis as to how the ALJ's RFC assessment is a lay opinion, how the ALJ interpreted raw medical data, and how this supports the notion that the RFC determination lacks the support of substantial evidence." ECF No. 20 at 8, *quoting Moore*, 2022 WL 716811, at *6. Defendant further argues that District of Nevada case law rejects the "assertion that [the] ALJ improperly disregarded [the] treating physicians' opinions, in part, where claimant 'identified no additional medically necessary limitation that should have been included in the [RFC].'" *Id.*, *citing Vavoukakis v. Saul*, Case No. 2:20-cv-01469-CLB, 2021 WL 2853644, at *6 (D. Nev. June 8, 2021). Defendant argues Plaintiff's failure to identify an additional RFC limitation to which she is entitled requires denial of her Motion to Remand. ECF No. 20 at 8.

Defendant also distinguishes the Ninth Circuit decision in *Day v. Weinberger*, *supra*, emphasizing the ALJ in that case exceeded the scope of his authority "insofar as he 'should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition.'" *Id.* at 9 (quoting *Day*, 522 F.2d at 1156) (emphasis removed). Here, Defendant correctly points out that the ALJ did not go outside the record to make his determination, but instead summarized the medical opinions available and translated that evidence into the RFC. *Id.*

Defendant points out the ALJ's extensive reasoning supporting his determination that Plaintiff can perform light work with bathroom access as established through regularly scheduled work breaks. *Id.*, *citing* AR 37-38. Defendant states the ALJ surveyed the medical evidence and

medical opinions, while specifically addressing "the issue of bathroom access in evaluating the prior administrative medical findings" of the two state agency consultants and Joan Rueter Carapucci, PA-C ("Carapucci"). *Id.* Defendant maintains the ALJ provided several reasons for his findings with respect to these opinions, and argues Plaintiff's brief fails to challenge this reasoning or otherwise acknowledge the ALJ's explanation. *Id.* at 10-11. Defendant reiterates Plaintiff "does not identify any medical evidence showing she is more functionally limited than the RFC." *Id.* at 12.

Defendant also responds to Plaintiff's claim that the ALJ improperly discounted her symptom testimony. *Id.* at 13. Defendant again points out that Plaintiff stipulated to the accuracy of the ALJ's summary of Plaintiff's symptom testimony and that she "accepted" her "impairments caused significant limitations" resulting in the ALJ's RFC assessment of light work—a restrictive RFC. *Id.* at 14. Defendant argues the ALJ did not reject Plaintiff's symptom testimony, but instead "accepted that Plaintiff's functional abilities were significantly limited by her impairments" while concluding Plaintiff was not altogether disabled. *Id.* Defendant points to the ALJ's three reasons for failing to entirely credit Plaintiff's testimony and argues they are sufficient to support the ALJ's finding. These include that: "(1) objective medical findings did not support the extent of [Plaintiff's] allegations; (2) the medical record showed her physical condition improved; and (3) Plaintiff made inconsistent statements concerning her daily activities, which indicated she had greater abilities than alleged." *Id.* at 14-15.

With respect to the objective medical findings, Defendant notes Plaintiff does not "directly challenge" the ALJ's reasoning, arguing instead that the ALJ may not discredit Plaintiff's testimony on this basis alone. *Id.* at 15. Defendant counters this argument saying the ALJ based his finding on additional evidence including that Plaintiff's condition improved significantly with treatment, thus "contradict[ing] her allegations regarding her functional abilities" in accord with Ninth Circuit precedent. *Id.*, citing 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling), and *Bailey v. Colvin*, 669 Fed. Appx. 839, 840 (9th Cir. 2016) (unpublished) (no error in discounting claimant's testimony where "medical evidence suggest[ed]

that many of [her] impairments had improved … or responded favorably to treatment."). Next, Defendant identifies the ALJ's evaluation of record evidence demonstrating Plaintiff's abdominal pain and diarrhea in late 2010 improved after an adjustment of medications, as well as image reports from March 2020 revealing her Crohn's disease was in remission. ECF No. 20 at 15-16, *citing* AR 33-35. Defendant addresses Plaintiff's challenge to the ALJ's review of the evidence arguing "[i]t makes no sense that Plaintiff asks this Court to 'take notice' of the ALJ's summary of the evidence … but then argue[s] the ALJ did not consider the full context of the record as a whole without identifying *any evidence* that was not considered." *Id*. at 16 (emphasis in original). Defendant highlights that among the evidence reviewed by the ALJ was the June 2019 second opinion of Dr. Syed Abdul Basit questioning whether Plaintiff displayed any signs of inflammatory bowel disease in light of the biopsy he considered. *Id.* Defendant argues Plaintiff fails to contradict this opinion or any of the evidence of her improvement. *Id.* at 17.

Finally, Defendant emphasizes the ALJ's detailed and repeated explanation that he found Plaintiff's symptom testimony not fully credible in light of her daily living activities. *Id.* In particular, Defendant notes the discrepancy between Plaintiff's function report "in *April 2020* that she took her boyfriend's mother to the store or to doctor's appointments … [as contradicting] her testimony at the hearing in January 2021 that she stopped taking care of her boyfriend's mother around two years prior (AR 35; *see* AR 58-59)." *Id.* at 18 (emphasis in original). In addition, Defendant notes the ALJ found inconsistencies in Plaintiff's testimony that she must walk very slowly to avoid exacerbating her abdominal pain, but runs to the bathroom quickly. *Id.* Defendant argues these findings are reasonable, and Plaintiff does not address or offer an explanation for the inconsistencies. *Id.* Defendant argues the Ninth Circuit allows "consideration of activities that illustrate abilities beyond what a claimant alleges, and inconsistent statements serve as an independent permissible reason for discounting a claimant's testimony." *Id.*, *citing Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *Valentine v. Astrue*, 574 F.3d 685, 693 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); 20 C.F.R. § 416.1529(c)(4).

D. <u>The RFC Calculation Was Supported by Substantial Evidence</u>.

The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). This said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Uklov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Sartor v. Colvin*, Case No. 2:14-cv-00570-APG-NJK, 2015 WL 5980617, at *1 (D. Nev. Aug. 10, 2015).

 **1.** **The ALJ's assessment of Plaintiff's impairments**.

  a. *The ALJ's summary of the evidence*.

In calculating Plaintiff' RFC, the ALJ reviewed Plaintiff's symptom and medical history testimony. AR 32. Summarizing that testimony, the ALJ noted:

- Plaintiff's reports of substantial limitations in her day-to-day activities arising from her inflammatory bowel and Crohn's disease exemplified by extreme and immobilizing pain that makes her want to "curl up and not move." *Id.*;

- Plaintiff reported this pain occurs approximately four times a week and primarily while walking fast. *Id.*;

- As of the hearing date, Plaintiff stated she could not shop at the store for more than 30 minutes because of pain from walking and that "she used to care for her boyfriend's mother, such as by taking her to the store or medical appointments, but has stopped for the past year and a half or two years because she began experiencing pain when she was walking in the store." *Id.*;

- Plaintiff's testimony that she can walk for about ten minutes and stand for about twenty minutes before needing rest. AR 32-33;

- Plaintiff's testimony that she needs to use the restroom three to five times a day, and that "she rushes to the bathroom at such times." AR 33; and,

- The ALJ noted Plaintiff's function report, in which Plaintiff reports needing to occasionally use a walker due to feelings of weakness. *Id*.

Evaluating the record as a whole, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's alleged symptoms, but her statements "concerning the intensity, persistence and limiting effects of these symptoms … [were] not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history[,] … degree of medical treatment required, and the claimant's description of her activities of daily living …." AR 33. The ALJ also questioned the extent of symptoms Plaintiff alleges in light of the laboratory and clinical findings in the medical record. *Id*. The ALJ noted an urgent care visit in July 2019 for generalized abdominal pain, nausea, vomiting, and diarrhea. *Id*. The gastroenterology department treated Plaintiff with steroids and antibiotics, which caused Plaintiff's condition to improve. *Id*. One month later, in August 2019, Plaintiff returned complaining of abdominal pain and ultimately underwent surgery for a perforated duodenal ulcer. *Id*. The ALJ commented that Plaintiff "tolerated the procedure well with postoperative pain that eventually improved. She also tolerated advancement of diet with good return of bowel function. She was discharged in stable condition." *Id*.

The ALJ considered a third hospital visit in September of 2019 in which Plaintiff was admitted for diarrhea and abdominal pain. *Id*. The ALJ noted that "[d]uring this time, her inflammatory markers were low, leading away from an acute flare [up] of her inflammatory bowel disease." *Id*. Plaintiff's condition improved throughout the stay. *Id*. In addition, the ALJ found "the [Plaintiff] was also counseled on diet and exercise for weight loss" and "tobacco use cessation." AR 34. In October 2019, Plaintiff consulted her primary care provider for "increased nausea and vomiting, inability to keep anything down, and continued abdominal pain." *Id*. The ALJ commented, however, that "post-surgical complications were ruled out, … [h]er physical exam was normal, including observations of soft[] bowel sounds present in all quadrants, no tenderness, no mass, and no organomegaly in her abdomen." *Id*. Plaintiff was again encouraged to treat her condition through diet and by ceasing to smoke. *Id*.

The ALJ next reviewed an emergency room visit in November 2019 when Plaintiff reported dark, loose stools, but no constipation, abdominal distention, nausea, or vomiting. *Id*. Her abdominal functioning was normal, and "she had a soft, non-tender, non-distended abdomen without guarding, rebound, or mass." *Id*. The ALJ discussed a CT scan demonstrating "mucosal hyperemia in the proximal ascending colon which could be secondary to early colitis or consistent with her Crohn's." *Id*. At a follow up appointment in January 2020, Plaintiff's physician noted EGD and colonoscopy results revealing gastritis, a hiatal hernia, bile reflux, duodenal diverticulum, pancolitis, and collagenous colitis. *Id*. However, the ALJ noted "[h]er physical exam still was normal" with "no apparent tenderness to palpation and no palpable masses." *Id*. The ALJ also stated Plaintiff's treatment with Dicyclomine was "somewhat helpful." *Id*.

A March 2020 CT scan revealed "no evidence of active inflammatory change of the bowel and no penetrating disease." *Id*. In June 2020 Plaintiff told her providers that since beginning Budesonide and Questran her diarrhea had improved. *Id*. Plaintiff's "exam was unchanged since her last visit in January 2020, with largely normal respiratory, cardiovascular, abdominal, musculoskeletal, and neurological functioning despite an elevated BMI level of 40.25 kg/m$^2$." *Id*. In August 2020, Plaintiff was referred to Dr. Basit, for a second opinion. *Id*. After reviewing Plaintiff's EGD and colonoscopy report from June 2019, the ALJ noted Dr. Basit's conclusion that "based on the available data, he was not sure that the claimant had any inflammatory bowel disease." AR 34-35. Dr. Basit "did not believe that [Plaintiff's] abdominal pain was gastrointestinal in nature." AR 35.

In December 2020, Plaintiff reported to the Digestive Care Wellness Institute with pain and nausea, stating she had extreme pain with walking (7 out of 10). *Id*. However, the ALJ's review of the record showed "[h]er physical exam was normal, including … a soft, non-tender abdomen with no masses and normal bowel sounds. She also exhibited full range of motion in her extremities." *Id*. Results of a second EGD and colonoscopy that month revealed "no significant abnormalities, including small bowel mucosa, large[] intestine mucosa, mild chronic inactive gastritis, and negative H. pylori." *Id*.

### b. The ALJ's findings.

After reviewing Plaintiff's testimony and the corresponding record evidence, the ALJ found Plaintiff's testimony "not fully consistent with the medical record." *Id*. The ALJ explained that "although the claimant experienced increased abdominal pain and diarrhea with a few hospitalizations within a short four-month period in late 2019, once her medications were adjusted, she experienced an improvement in her symptoms." *Id*. The ALJ cites Plaintiff's June 2020 report showing she obtained relief for her diarrhea from Budesonide and Questran, and her "largely benign" imaging from March 2020 that revealed her Crohn's disease was in remission. *Id*. The ALJ further cited, albeit non-specifically, Plaintiff's normal abdominal imaging and testing, symptom alleviation with diet and medication, and normal physical exams subsequent to March 2020. *Id*.

The ALJ found Plaintiff's allegations of total disability inconsistent with her description of daily activities including driving to the grocery store and medical appointments, dusting, doing laundry, feeding and cleaning up after her dog, vacuuming, sweeping, and mopping. *Id*. The ALJ cited function reports from January and April of 2020, in which Plaintiff reported she could "prepare simple meals, maintain her self-care, and take her boyfriend's mother to her doctor appointments or the store." *Id*. The ALJ concluded that these April 2020 statements contradicted Plaintiff's January 11, 2021 testimony in which Plaintiff said she stopped taking care of her boyfriend's mother almost two years ago. *Id*. The ALJ also found contradiction between Plaintiff's statement that "she tries to walk slowly to avoid being in significant pain" and her ability "to quickly rush to the bathroom if needed." *Id*.

The ALJ stated that although Plaintiff testified she uses the restroom three to five times a day is consistent throughout the record, Plaintiff "did not specify at what times of the day she has to use the bathroom nor for how long she needs to use the bathroom each time." For this reason, and because Plaintiff "could not explain how walking exacerbates her abdominal pain[,] and [because] she testified that her physicians could not explain this either[,]" the ALJ found Plaintiff could be accommodated with restroom access within regularly scheduled work breaks. *Id*. The ALJ found additional contradiction between Plaintiff's testimony and her reports of occasionally needing a walker, "as the claimant was never observed to be using a walker on medical visits, her range of

12

motion and gait were noted to be within normal limits, and she was able to perform activities of daily living without an assistive device such as walking in stores, driving, and performing household chores." AR 36.

The ALJ considered medical findings from state-agency consultants that Plaintiff "could perform light work with … environmental limitations" partially unpersuasive in light of Plaintiff's consistently normal physical exams throughout the record. *Id.* In addition, due to Plaintiff's failure to specify the exact nature of her need for restroom access, the ALJ found this need "can be accommodated within the regularly scheduled work breaks." *Id.* Nonetheless, the ALJ found the limitation to light work persuasive based on record evidence demonstrating "that while the claimant reported experiencing abdominal pain and diarrhea that required a few hospitalizations early on in the relevant period, she then was able to experience improved symptoms with medications as well as" perform activities of daily living. *Id.* The ALJ stated light work limitation is "consistent with the post-evaluation treatment record, which included clinical examinations showing largely normal … functioning despite elevated BMI levels, laboratory imaging showing her Crohn's to be in remission, a recent endoscopy showing largely benign results with mild inactive gastritis, as well as the claimant's testimony of her ability to perform activities of daily living." *Id.*

The ALJ discounted the November 2020 opinion offered by Carapucci that Plaintiff "would be off task 5% of the day and be absent from work two days a month" because Carapucci also opined that Plaintiff has no mental limitations, and because Carapucci lacked expertise in or treatment of Crohn's and inflammatory bowel disease. AR 37. The ALJ found Carapucci's opinion similarly inconsistent with the record showing Plaintiff's Crohn's disease was in remission by March 2020, Plaintiff's "improved abdominal pain and diarrhea on medications, and her reported activities of daily living." *Id.* Specifically addressing the alleged inflammatory bowel disease and Plaintiff's activities of daily living, the ALJ explained:

> [d]riving to the store and medical appointments, as well as shopping in the store for at least 30 minutes, show that the claimant is able to complete activities fully without interruption from needing to go to the restroom. Further, her ability to perform the aforementioned household chores require some walking, as well as bending and stooping, demonstrating that … she is able to carry out basic daily activities despite her abdominal pain and diarrhea.

AR 37-38. Thus, the ALJ found a light exertional requirement with accommodations for bathroom breaks throughout the regularly scheduled workday appropriate. *Id*.

### 2. There is sufficient evidence to support the RFC.

Plaintiff fails to identify any error the ALJ committed in incorporating the medical evidence into his RFC. The Ninth Circuit holds that under the social security regulations "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)); *see also Bufkin v. Saul*, 836 Fed. Appx. 578, 579 (9th Cir. 2021) (unpublished) ("the ALJ properly considered all of the various types of evidence in the medical record, including objective evidence such as x-rays, [claimant's] treatment history, and clinical findings, and properly translated and incorporated this evidence into an RFC finding"). In *Bufkin*, the court found the ALJ "did not rely on her 'lay interpretation' of medical evidence" but "simply summarized the medical evidence from [treating doctors]." 836 Fed. Appx. at 579.

Here, Plaintiff accuses the ALJ of interpreting raw medical data because his decision that Plaintiff did not need increased bathroom access outside the regular work schedule lacks a specific supporting opinion. However, Plaintiff points to no interpretation of the medical documentation in the ALJ's decision, which the Court finds summarizes objective medical evidence in question translating that evidence into an RFC. All conclusions the ALJ reached on Plaintiff's condition were based on clinical findings and testimony from medical sources and Plaintiff herself.

In contrast to the ALJ in *Day v. Weinberger*, who committed error when he consulted medical textbooks outside the record (522 F.2d at 1156), here the ALJ's review of the MRIs Plaintiff identifies never goes beyond a summary of the objective findings, which he considered in combination with the various types of evidence in the record, ultimately leading to the RFC. AR 32-37. The ALJ based his finding, in large part, on the fact that Plaintiff did not need a particular bathroom break schedule based on the lack of medical professionals evidence identifying such a specific or proposed schedule. AR 36. Plaintiff's argument that the ALJ provided his "lay interpretation" of raw medical data is simply unsupported and, therefore, unpersuasive given the

ALJ's thorough discussion of the medical evidence and that the ALJ's finding are based on what evidence was presented. *Id.*

Requiring the ALJ to follow up with an examiner after the hearing because the examiners did not testify that Plaintiff must be accommodated by means of a particular bathroom schedule (*see* ECF No. 19 at 8) is contrary to the proposition that Plaintiff always bears the burden of establishing disability. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001), *citing* 42 U.S.C. § 423(d)(5) (Supp.2001) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). The ALJ had no duty to unilaterally offer a bathroom schedule; nor did he have to seek additional information on this issue given the record was sufficient to allow for a proper evaluation. *Id*. at 459-60 (internal citation omitted).

Nothing in the record is inconsistent with the RFC, the calculation of which is the exclusive domain of the ALJ, and must be respected under the deferential substantial evidence standard. *See Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1156 (2019). As the court found in *Bufkin*, "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." 836 Fed. Appx. at 579. Further, the fact that Plaintiff's Motion, like the opinions of the various medical professionals, does not make any attempt to identify particular bathroom access requirements supported by medical evidence undermines Plaintiff's argument that greater limitations are medically necessary. Plaintiff's lack of analysis on this point and the conclusory assertion that the RFC was unsupported fails to warrant a finding of error under the substantial evidence standard. *Champagne v. Colvin*, 582 Fed. Appx. 696, 697 (9th Cir. 2014) (unpublished) (finding the ALJ did not err in rejecting the medical opinions available to him in part where Plaintiff "identified no additional medically necessary limitation that should have been included in the residual functional capacity.").

E. <u>The ALJ Supplied Clear and Convincing Reasons for Partially Discrediting Plaintiff's Testimony</u>.

The ALJ provided a thorough discussion of and reasons for partially discounting Plaintiff's symptom testimony. AR 32-38. The ALJ's analysis of Plaintiff's statements regarding the intensity,

persistence, and limiting effects of her symptoms as "not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history and degree of medical treatment required, and the claimant's descriptions of her daily living" constitute clear and convincing reasoning. *Id*. at 33-38.

To the extent that the limitations in the RFC are inconsistent with Plaintiff's pain and symptom testimony, the ALJ gave specific, clear and convincing reasons for the difference. *Id*. at 33-35. The ALJ reviewed Plaintiff's testimony and provided what Plaintiff agrees is an accurate summary of that testimony in comparison to medical evidence. *Id*. at 35. The ALJ specified that the RFC, which limits Plaintiff to performing "light work," included limitations in light of Plaintiff's hearing testimony. AR 37. The administrative record shows that the ALJ carefully considered and incorporated Plaintiff's testimony in the RFC while doubting the degree to which Plaintiff's symptoms actually prevented her from performing all work functions in light of the record as a whole. AR 35.

The ALJ explained that Plaintiff's testimony concerning the nature and degree of her abdominal pain and gastrointestinal distress was "not fully consistent" with the objective medical and overall record evidence. *Id*. The ALJ discussed that despite Plaintiff's repeated hospitalizations "within a short four-month period in 2019," the record revealed improvement over time—that is, "as recently as June 2020, the claimant reported that her diarrhea has subsided with Budesonide and Questran, and that she was having two to three soft stools a day." *Id*. The ALJ's discussion emphasizes corresponding imaging from June 2020 revealed "largely benign" findings and that imaging from March 2020 revealed her Crohn's disease was in full remission. *Id*. The ALJ cited record evidence that following the Spring of 2020, Plaintiff's "abdominal symptoms were controlled on medications and adherence to a healthier diet" and that physical exams generally revealed normal findings. *Id*.

The ALJ further explained how Plaintiff's representations undermine her testimony. *Id*. The ALJ reviewed over ten different household chores and errands Plaintiff testified to regularly performing as of April 2020, including driving, dusting, laundry, feeding and cleaning up after her dog, vacuuming, sweeping, mopping, performing self-care tasks, preparing simple meals, and taking

care of her boyfriend's mother. *Id.* Plaintiff's argument that the ALJ failed to explain the nexus between objective findings and Plaintiff's testimony fails. Not only did the ALJ describe the inferences he made arising from the evidence, but, the record on its face provides evidence that contradicts Plaintiff's allegations of total disability. *See Molina*, 674 F.3d at 113 (even if a claimant's activities, at most, "suggest some difficulty functioning, [those activities] may be grounds for discrediting [the plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment."). This conclusion is further supported by the apparent inconsistencies the ALJ noted between Plaintiff's hearing testimony that she ceased taking care of her boyfriend's mother almost two years from the February 2021 hearing and her January and April 2020 function reports listing caring for her boyfriend's mother among Plaintiff's current daily activities. AR 35. The ALJ was entitled to question Plaintiff's credibility in light of these discrepancies. *Tommasetti*, 533 F.3d at 1039.

The Court finds Plaintiff's arguments insufficient to support remand of this case for further proceedings. Plaintiff does not address the evidence of improvement or argue Plaintiff's statements were not inconsistent. Instead, Plaintiff makes sweeping statements without specifics asserting that the ALJ did not review the record "in context of the overall diagnostic picture" but rather in a "vacuum." ECF No. 19 at 10. However, under the deferential substantial evidence standard, if the record reasonably "support[s] either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1099 (N.D. Cal. 2019). As discussed fully above, the Court finds the ALJ's RFC was supported by substantial evidence. As such, the Court upholds the Commissioner's decision and denies Plaintiff's Motion for Reversal and Remand.

**IV.    ORDER**

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 19) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 20) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Defendant and close this case.

Dated this 22nd day of August, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE